UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Federal Trade Commission

v. Civil No. 04-377-JD

Seismic Entertainment Productions, Inc., SmartBot.Net, Inc., and Sanford Wallace

O R D E R

The Federal Trade Commission ("FTC") brings an action against Sanford Wallace, Seismic Entertainment Productions, Inc., and SmartBot.Net, Inc., under the Federal Trade Commission Act, seeking an injunction to stop the defendants from engaging in certain internet marketing practices. The FTC contends that the defendants' marketing practices are unfair practices affecting commerce and seeks injunctive and related relief under the Federal Trade Commission Act ("FTCA"). Currently before the court is the FTC's motion for a temporary restraining order ("TRO") and other equitable relief.

The defendants were served with and filed an objection to the TRO motion. A non-evidentiary hearing was held on the motion on October 15, 2004. At the end of the hearing, the court directed counsel to come to an agreement on expedited discovery to precede the preliminary injunction hearing. The court also

asked the FTC to draft narrower language for its proposed TRO and invited the defendants' counsel to participate in the process of narrowing the proposed TRO. Counsel drafted and filed a discovery stipulation, and the FTC filed a revised proposed TRO. Counsel for the defendants chose not to participate in the drafting process for the revised proposed TRO. The defendants filed their objection to the FTC's revised proposed TRO within the time allowed.

## Background

The FTC seeks temporary injunctive relief to restrict the defendants' activities pending resolution of their request for a preliminary injunction. Specifically, the FTC asks that the defendants, along with individuals acting with them or on their behalf, be required to remove software script that exploits the web browser security vulnerabilities referenced in Microsoft Bulletins MS03-032 and MS03040 or any other web browser security vulnerabilities that allow the defendants to install, download, or deposit any software code, program, or content onto a computer without the computer user's knowledge or authorization.[1] The defendants received notice of the FTC's request, have filed

[1] The proposed order is more narrowly drawn than the temporary relief originally requested by the FTC.

objections, and participated through counsel in the hearing held on October 15, 2004.

In support of their motion, the FTC represents that the defendants have reconfigured consumers' computers by installing a software code, without the consumers' knowledge or authorization, that gives the defendants access to those computers for purposes of advertising. The FTC has submitted a declaration by Steven D. Gribble, Ph.D., an assistant professor of Computer Science and Engineering at the University of Washington, who tested and evaluated the effects of the defendants' activities. The FTC has also submitted the declarations of Sallie S. Schools, an investigator in Bureau of Consumer Protection of the FTC, and of individuals who have been affected by the defendants' actions and practices.

Dr. Gribble explains that "spyware" is software that gathers information about a computer's use and transmits that information to someone else, appropriates the computer's resources, or alters the functions of existing applications on the computer, all without the computer user's knowledge or consent. A type of "spyware" that uses collected information to display targeted advertisements is called "adware." Dr. Gribble found that the defendants exploit known security vulnerabilities in certain web browsers to gain access to computers, without their users'

knowledge or consent, through web sites controlled by the defendants. The defendants' web sites instruct vulnerable web browsers to display pop-up advertisements and content from other pages of the network of web sites. The web sites use "exploit code" to change the computer user's homepage, override search functions on the browser, and download and install spyware and other programs. These activities are all done without the computer user's knowledge or authorization.

The defendants use the pop-up advertisements to market their own "anti-spyware" products along with others' products. The defendants' actions have caused affected computers to slow, malfunction, or crash completely. Consumers whose computers have been affected by the defendants' activities have spent considerable time, and in some cases money, to fix the problems caused by the defendants.

The defendants do not deny that they engage in the activities described by the FTC. Instead, they object to the FTC's negative characterization of their activities. The defendants argue that at least some of their activities are widely accepted internet practices and should not be prohibited.[2]

---

[2]The only evidence the defendants offer to support their claim that their activities are widely-accepted internet advertising practices is a copy of an article from news.com that discusses internet advertisers' use of pop-up advertising. Even

The defendants also do not contest that their activities have generated substantial revenue, through sales of their own products and advertising commissions on sales made by others.

Discussion

The Federal Trade Commission Act provides: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." 15 U.S.C. § 45(a)(1). The Act also provides that it is unlawful "for any person, partnership, or corporation to disseminate or cause to be disseminated, any false advertisement . . . having an effect upon commerce, by any means, for the purpose of inducing, or which is likely to induce, directly or indirectly the purchase of . . . devices, [or] services." Id. § 52(a). "The dissemination or the causing to be disseminated of any false advertisement within the provisions of subsection (a) of [§ 52 is] an unfair or deceptive act or practice in or affecting commerce within the meaning of section 45." Id. § 52(b). To be actionable, the act or practice must be "likely to

---

if the article were adequate support, the argument that "everyone is doing it" is not persuasive.

The court notes that the issues presented here apparently raise a matter of first impression. Similar activities, however, have not been seen as acceptable practices by affected consumers. See Brown v. Erie Ins. Exch., 2004 WL 318888 (Cal. Ct. App. Feb. 20, 2004) (discussing class action against similar activities in context of insurance coverage dispute).

cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or competition." Id. § 45(n).

The FTC is authorized to prevent persons, other than those excluded in the statute, from engaging in unfair and deceptive acts or practices. § 45(a)(2). The FTC may bring suit in federal court to obtain a TRO or preliminary injunction pending the initiation of administrative action. Id. § 53(b). Alternatively, the FTC may proceed entirely in federal court, seeking a permanent injunction and ancillary relief, including temporary or preliminary injunctive relief. Id.; F.T.C. v. Gem Merch. Corp., 87 F.3d 466, 468-69 (11th Cir. 1996); F.T.C. v. World Travel Vacation Brokers, Inc.; 861 F.2d 1020, 1026 (7th Cir. 1988); F.T.C. v. Think Achievement Corp., 144 F. Supp. 2d 1013, 1015 (N.D. Ind. 2000); F.T.C. v. Commonwealth Mktg. Group, Inc., 72 F. Supp. 2d 530, 535 (W.D. Pa. 1999); F.T.C. v. Gill, 71 F. Supp. 2d 1030, 1047 (C.D. Cal. 1999).

When, as here, the FTC seeks temporary injunctive relief pending further proceedings on the complaint for a permanent injunction, the court does not use the traditional TRO standard but instead applies the more lenient "public interest" standard. World Travel, 861 F.2d at 1029. Under the public interest standard, the FTC need not prove irreparable harm, but instead

the court considers the likelihood that the FTC will succeed on the merits and balances the equities implicated by the challenged activities. Id.; F.T.C. v. Phoenix Avatar, LLC, 2004 WL 1746698, at *8 (N.D. Ill. July 30, 2004); In re Nat'l Credit Mgt. Group, L.L.C., 21 F. Supp. 2d 424, 439-40 (D.N.J. 1998). Although the court may consider the private concerns raised by the proposed relief in balancing the equities, the public interest is entitled to greater weight. World Travel, 861 F.2d at 1029.

A. Likelihood of Success

To show a likelihood of success, the FTC must demonstrate that the defendants' activities are unfair or deceptive within the meaning of the FTCA. 15 U.S.C. § 45(a). "In order to establish that an act or practice is deceptive, the FTC must establish that the representations, omissions, or practices likely would mislead consumers, acting reasonably, to their detriment." World Travel, 861 F.2d at 1029; see also, e.g., F.T.C. v. Pantron I Corp., 33 F.3d 1088, 1095 (9th Cir. 1994) (using FTC's standard from Cliffdale Assocs., 103 F.T.C. 110) (1984)); F.T.C. v. 1263523 Ontario, Inc., 205 F. Supp. 2d 218, 221-22 (S.D.N.Y 2002); F.T.C. v. Verity Int'l, LTD, 124 F. Supp. 193, 200 (S.D.N.Y. 2000). The FTC must also show that the defendants' activities are "likely to cause substantial injury to consumers which is not reasonably avoidable by consumers

themselves and not outweighed by countervailing benefits to consumers or competition.” 15 U.S.C. § 45(n).

The defendants’ activities in the new arena of internet advertising do not necessarily fit easily into the traditional concepts of unfair and deceptive acts and practices under the FTCA. Nevertheless, the declarations of the computer users who have been affected by the defendants’ activities amply support the likelihood that the FTC will be able to prove violations of the FTCA and that consumers have experienced substantial injury without countervailing benefits. The declarants’ experiences include unauthorized changes of their home pages, difficulty using their computers, and infusions of pop-up ads, including pornographic ads and ads for anti-spyware software. The affected users were not notified of the defendants’ activities and did not know what had caused the problems with their computers, making the defendants’ activities both deceptive and unfair.

One declaration states that 200 computers in the Atlanta office of a national company were affected by the defendants’ practices for a period of two weeks. During that time, the computers did not function properly, worked slowly, froze, lost data, and crashed. The problems required a significant amount of time by technical specialists to remove the defendants’ programs and software from the affected computers.

The vice president of an internet advertising company

discovered that advertising from defendant Seismic Entertainment Productions caused problems with the company's computers and that a supposedly revised and clean version of the ad also generated similar problems and complaints and was then cancelled. A school district in Michigan had affected computers that required a significant amount of time by the computer specialist to clear the problems created by the defendants.

Individual users report that they bought the anti-spyware offered for sale by the defendants to "fix" the problems the defendants had caused. They also attempted to solve the problems by resetting their computers, exiting and rebooting, running anti-virus software, and getting help from experts. One user said that she was unable to fix her computer, even with help from computer science graduate students, and after two and half weeks the hard drive failed, requiring her to buy a new computer. All of the users who submitted declarations experienced significant interruptions in their computer use.

The defendants have offered no contrary evidence or explanations of any kind and do not dispute that they engage in the activities charged by the FTC.[3] Instead, counsel for the defendants argues that at least some of their activities are

[3]The references in the defendants' objection to two web sites that teach "Javascript" did not provide persuasive support for the defendants' position.

accepted marketing practices used by reputable companies. Although the defendants insist that they need time to investigate the FTC's charges, they have not offered any explanation of their activities to counter the FTC's well-supported claims.

Based on the present record, the FTC is likely to succeed in showing that the defendants' activities are unfair and deceptive practices within the meaning of the FTCA. Those activities cause and will continue to cause substantial injury to consumers by negatively affecting the performance of their computers and requiring significant time and expense to remedy the problems the defendants cause. Consumers are not able to avoid these problems because the defendants access their computers, install software and programs, and make changes without the user's knowledge or consent. The defendants have offered no countervailing benefit from their activities to consumers or competition, and the court perceives no such benefits from the present record. Therefore, at this early stage, the FTC appears to be likely to succeed on the merits of the claim that the defendants are violating, and continue to violate, the FTCA.

B. Balance of the Equities

For similar reasons, the balance of the equities favors granting temporary injunctive relief. When, as here, the FTC demonstrates a likelihood of success, a showing of private

concerns implicated by the proposed injunction is not enough to deny injunctive relief. Phoenix Avatar, LLC, 2004 WL 1746698, at *9 (citing FTC v. Weyerhaeuser Co., 665 F.2d 1072, 1083 (D.C. Cir. 1981)). Private concerns are to be given greater consideration in weighing the merits and harms of the proposed injunction when the defendants can show that granting the injunction would cause them irreparable harm. Id.

In this case, the defendants challenge the proposed TRO's prohibition against using "web browser security vulnerabilities" to download software or other "content." They argue that because those terms are not defined, the prohibition could include legitimate and accepted marketing practices.[4] Defendants further argue that the issues raised by the FTC's proposed TRO are complex and cannot be adequately addressed on the present schedule.

The defendants do not offer a narrower or more precisely

[4]In their objection, the defendants argue that a law passed in Utah, regulating internet advertising, was similarly overbroad and vague, which caused the court to enjoin its enforcement, and appends a copy of an excerpt from that proceeding. Contrary to the defendants' representation, however, the Utah court did not find any part of the challenged law overbroad or vague. Instead, the court concluded that the plaintiff was not likely to succeed on its constitutional challenge to that part of the law which prohibits unauthorized installations of software on computers but that the prohibition against all pop-up ads and a protocol for authorization and consent would likely violate the Commerce Clause. The court granted preliminary injunctive relief pending further litigation of the constitutional issues.

drawn version of the TRO language that might permit them to carry on advertising activities, which they contend are legitimate.[5] Their explanations that commonly-used advertising practices would be prohibited are not supported by affidavits or declarations. Nor do they convincingly explain the difference between their "accepted" activities and other activities. In fact, the defendants themselves, who presumably have considerable expertise about the matters at issue, are notably silent. Although defendants' counsel has argued that the proposed injunctive relief would harm the defendants' business, the defendants have not provided any support for that argument.

The defendants also object to the references in the proposed TRO to two Microsoft Bulletins, which describe certain web browser security vulnerabilities. The defendants contend that the bulletins are not competent evidence to support the FTC's claims against them. The court construes the references to the Microsoft Bulletins to merely describe certain kinds of security vulnerabilities rather than as evidence of the defendants' harmful techniques. The defendants' objection to the scope of the prohibition is not persuasive.

As the defendants point out, the FTC's investigation was

[5]The court urged defendants' counsel to meet with counsel for the FTC to work out an agreement for interim relief while the FTC was drafting a more narrow proposed TRO. Defendants' counsel chose not to participate in that process.

initiated in response to consumer complaints about their activities. The Center for Democracy and Technology filed a complaint with the FTC on February 11, 2004, alleging the same activities that form the basis of the FTC's action here, arising from complaints the Center had received from computer users. The public interest in curtailing the defendants' unauthorized access to consumers' computers is amply demonstrated.

The defendants' asserted but unsupported individual interests in preserving their business activities and profit are of little weight. The public's interest in avoiding the problems described in the declarations submitted by computer users who have been affected by the defendants' activities is of greater concern. Therefore, the balance of the equities favors granting the protection requested in the proposed TRO.

C. Objections to Proposed Order

The defendants are correct that because the parties have stipulated to certain discovery that will occur prior to the preliminary injunction hearing, there is no need for that part of the TRO which addresses discovery. In addition, the defendants agree to preserve all records relevant to their internet activities and do not object to that part of the requested TRO. The court notes that paragraph VI of the proposed order raises matters that should be addressed through a separate motion, the

scheduling order in this case, or further discovery.

Although the FTC refers to Federal Rule of Civil Procedure 65 and describes the relief it seeks as a temporary restraining order, this is not a request for an ex parte TRO. The defendants have had notice and have had the opportunity to be heard. Therefore, the relief requested is more appropriately described as temporary injunctive relief, rather than a TRO. Temporary injunctive relief is granted as set forth in the accompanying order.

## Conclusion

For the foregoing reasons, the FTC's motion for a temporary restraining order (document no. 3) is granted in part as is set forth in the accompanying order. The remainder of that motion is construed as a motion for a preliminary injunction. An evidentiary hearing will be held before the magistrate judge on the motion for a preliminary injunction on November 9 and 10, 2004, beginning each day at 9:30 a.m.

SO ORDERED.

Joseph A. DiClerico, Jr.

Joseph A. DiClerico, Jr.
United States District Judge

October 21, 2004

cc: T. David Plourde, Esquire
Laura M. Sullivan, Esquire
Ralph A. Jacobs, Esquire