UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Federal Trade Commission

     v.                                        Civil No. 04-cv-377-JD

Seismic Entertainment
Productions, Inc., et al.


O R D E R

In October of 2004, the Federal Trade Commission ("FTC")
brought suit under the Federal Trade Commission Act, 15 U.S.C.
§§ 45(a) and 53(b), seeking injunctive relief.  On April 12,
2005, the FTC filed an amended complaint that named Mailwiper,
Inc., Spy Deleter, Inc., and John Robert Martinson as additional
defendants.  Default was entered as to Mailwiper, Inc., and Spy
Deleter, Inc., on May 17, 2005.  Since his counsel withdrew in
November of 2005, Martinson has proceeded on a pro se basis.


Background

Martinson filed a motion for an order of judgment on
December 6, 2005, in which he explained that he could not afford
to hire counsel to represent him in this matter and did not feel
he was capable of representing himself.  He stated that his
attempts to settle with the FTC had not been successful and asked
the court to enter an order of permanent injunction and
disgorgement of funds to settle the case.  The FTC filed a

proposed order of judgment as to the liability of Martinson, Mailwiper, Inc., and Spy Deleter, Inc., ordering a permanent injunction and disgorgement of $1,162,498.  Martinson responded to the FTC's proposed judgment, stating that he did not contest the permanent injunction proposed by the FTC but did object to the amount of disgorgement because he "did not earn nor [could he] pay $1,162,498.44 as proposed by the FTC."  Martinson asserted that his "total net profits for Mailwiper, Inc. and Spydeleter, Inc. for 2003 and 2004, during [co-defendant Sanford Wallace's] actual affiliation was [sic] $462,379.92."  The FTC replied to Martinson's response, stating that Martinson had not provided sufficient financial information to support an adjustment in the amount the FTC was requesting in disgorgement. The FTC also proposed that a permanent injunction issue, but that discovery be reopened as to the amount of disgorgement.

On February 27, 2006, the court denied Martinson's motion for judgment and directed him to respond to the FTC's most recent proposed judgment and request for additional discovery on or before March 6, 2006.  The court further stated that if Martinson failed to respond by that date his silence would be deemed to be to be agreement to the FTC's revised proposed order of judgment. When Martinson did not file any response by March 6, 2006, as he had been ordered to do, the court deemed his failure to respond to be agreement with the revised proposed order of judgment.

Order, March 16, 2006 (document no. 108).  The court concluded,
however, that the revised proposed order of judgment included
matters that would be better resolved in one single judgment
following the additional discovery proposed by the FTC.  The
court granted the FTC's motion to reopen discovery for six weeks
and denied the remainder of the motion "without prejudice to
filing a second revised proposed order, after discovery has
concluded, that addresses the current circumstances of the
corporate defendants and seeks appropriate relief."  Id. at 6.
The trial that was scheduled for March 21, 2006, was continued to
a date to be set at least eight weeks from March 17, 2006.

       The FTC pursued discovery by propounding interrogatories to
Martinson and scheduling the depositions of Martinson and his
wife.  On April 20, 2006, the court granted Martinson's motion
for a protective order, directing the FTC to review the
information it had received and to determine whether further
discovery was necessary.  The court added that "[w]ith respect to
any further issues that may arise in this case, Martinson is
directed to first make a reasonable effort to resolve those
issues with counsel for the FTC before resorting to filing a
motion for relief with the court."  Order of April 20, 2006
(document no. 118).  On May 8, 2006, the court noted that the FTC
had not requested additional discovery and that the six weeks
allowed for discovery had expired.  The court directed the

parties to file a report "explaining the status of the parties' progress toward a permanent injunction and order of judgment." Order of May 8, 2006, (document no. 119).

On May 15, 2006, Martinson filed a status report, and the FTC filed a status report and a motion for leave to take Martinson's deposition.  Martinson reported that the amount of disgorgement was still in dispute and that his attempts by email to reach a settlement with counsel for the FTC had been unsuccessful.  Martinson also stated that he had refused to discuss the case with counsel for the FTC by telephone because he was not represented by counsel, insisting instead that the FTC submit written requests for information.  In its status report, the FTC confirmed that Martinson refused to communicate by telephone, which had impeded progress in the case.  The FTC also detailed its discovery efforts and the results.  The FTC concluded that Martinson appeared to continue to dispute many of the facts pertaining to the amount of disgorgement.  The FTC also filed a motion for leave to depose Martinson.

Before Martinson responded to that motion, the FTC filed a status report explaining that it and Martinson had worked out an affidavit that addressed most but not all of the issues that would have been addressed in a deposition.  The FTC represented that the affidavit was acceptable as an alternative to a deposition, which was no longer necessary.  The court terminated

4

the motion for Martinson's deposition as moot.

On June 9, 2006, the FTC filed a motion for a permanent injunction as to Martinson, Mailwiper, Inc., and Spy Deleter, Inc., seeking both an injunction and a judgment of disgorgement in the amount of $1,862,270.18.  Martinson responded by filing "Request to Deny Proposed Order of Judgment for Permanent Injunction."  Martinson contends that he was not given sufficient time to respond to the FTC's proposed order and that the FTC did not make sufficient efforts to negotiate a settlement with him. He also contests the amount of disgorgement requested as being too high and duplicative of the amount awarded against Wallace and SmartBot.  The FTC replies that Martinson's affidavit supports the amount of disgorgement it is seeking, that joint and several liability applies and will prevent duplicative amounts of disgorgement, that no further issue exists as to the liability of Mailwiper, Inc., and Spy Deleter, Inc., and that "[s]ettlement negotiations ended many weeks ago, after Defendant Martinson refused to provide sworn information concerning his assets and financial situation."

## Discussion

The court expected that the FTC and Martinson would use the reopened discovery period to obtain information that would facilitate a settlement of the issues remaining in this case.  A

settlement was not achieved, however.  The corporate defendants are in default.  Martinson agrees that he is liable for the violations of the FTCA alleged in the complaint against him and does not contest the FTC's request for a permanent injunction or that disgorgement may ordered against him.

The only remaining disputed issue appears to be the amount of disgorgement.  Martinson continues to argue that he cannot pay the amount sought by the FTC.  He also argues that the FTC is seeking a double recovery based on the amounts sought from him and from his co-defendant Sanford Wallace.  The FTC responds that Martinson's ability to pay restitution is not a relevant consideration at this stage and that joint and several liability is the basis for its claims against the defendants, which precludes a double recovery.


A.  FTCA Remedies

The FTCA provides for a permanent injunction against further violations of the Act, see 15 U.S.C. § 53(b), which courts have interpreted to include the equitable remedy of restitution of unjust gains derived from illegal conduct.  FTC. v. Verity Int'l, Ltd., 443 F.3d 48, 65–66 (2d Cir. 2006) (citing cases); FTC v. Freecom Commc'ns, Inc., 401 F.3d 1192, 1202–03 (10th Cir. 2005) (same).  Because the restitution remedy allowed under § 53(b) is equitable, a jury trial is not available on that issue.  Verity Int'l, 443 F.3d at 67.

6

To prove the amount of restitution to be ordered, the FTC must "first show that its calculations reasonably approximated the amount of the defendant's unjust gains, after which the burden shifts to the defendants to show that those figures were inaccurate." Id. (internal quotation marks omitted). The amount of a defendant's gross receipts from consumer sales in violation of the FTCA is "a proper beginning point" for calculating the amount of disgorgement. Freecom, 401 F.3d at 1206. "The appropriate measure for restitution is the benefit unjustly received by the defendants." Id. That amount need not be reduced to the amount of a defendant's profits from the illegal activities. Febre, 128 F.3d at 536.

The FTC asserts that a defendant's ability to pay is not a factor in determining the amount of restitution to be awarded. The cases it cites in support of that proposition, however, discuss the calculation of the amount of restitution for an FTCA violation but do not appear to address the question of whether ability to pay may be considered as a factor in that calculation. In contrast, it appears that the FTC does consider a defendant's ability to pay restitution when entering into settlements with defendants. See Freecom, 401 F.3d at 1198. Indeed, the FTC in this case sought sworn information from Martinson about his assets and financial situation. In addition, a defendant's ability to pay is a required factor in determining an appropriate penalty under 15 U.S.C. § 45(m)(1)(C). Further, unless a statute

7

provides otherwise, restitution, being an equitable remedy, generally includes a consideration of the defendant's ability to pay.  See, e.g., United States v. Rostoff, 164 F.3d 63, 71-72 (1st Cir. 1999); cf. United States v. Cheal, 389 F.3d 35, 53 (1st Cir. 2003) (discussing statutory prohibition in 18 U.S.C. § 3664(f)(1)(A) against considering defendant's ability to pay).

Therefore, the amount of the defendants' net profits from their illegal actions is not the measure of the amount of restitution that may be ordered against them.  It remains unclear, however, whether the defendants' ability to pay may be considered in awarding restitution.

B.  Joint and Several Liability

When "each defendant repeatedly participated in the wrongful acts and each defendant's acts materially contributed to the losses suffered, all defendants [may be] held jointly and severally liable."  FTC v. Gem Merch. Corp., 87 F.3d 466, 468 (11th Cir. 1996).  Joint and several liability means that each defendant is liable for the full amount of the judgment, separately, but the plaintiff cannot recover more than the amount of the judgment from them individually or jointly.  Tilcon Capaldi, Inc. v. Feldman, 249 F.3d 54, 62 (1st Cir. 2001). Individual and corporate defendants may be held jointly and severally liable for violations of the FTC Act.  See, e.g., FTC v. World Media Brokers, 415 F.3d 758, 765-66 (7th Cir. 2005).

Therefore, based upon the principle of joint and several liability, the FTC is not seeking duplicative recoveries from the defendants in this case.

C. <u>Settlement</u>

Based on those principles, the question of the amount of restitution to be ordered in this case must be resolved either by further litigation, possibly requiring a trial, or through further efforts to settle this case.  The FTC represents that it was not attempting to reach a settlement after Martinson refused to provide sworn information concerning his assets and financial situation.  The FTC withdrew its motion to compel Martinson's deposition, however, after Martinson provided a sworn affidavit that the FTC found was an acceptable alternative to a deposition. The FTC does not dispute that it allowed Martinson only a few hours to consider its proposed order of judgment before filing it with a motion for a permanent injunction.  Martinson's responses indicate a lack of understanding of the legal standards that are applicable to the FTC's claims against him in this case.

Under these circumstances, further efforts to reach a settlement would be appropriate.  To that end, Martinson shall participate in settlement discussions in person or by telephone with counsel for the FTC.  The parties shall file a joint status report **on or before July 12, 2006,** in which they either report their settlement and file a stipulation of dismissal, an agreed

9

order, or a consent decree or notify the court that settlement
was not possible.  In the event a settlement is not reached, the
case will be scheduled for trial.

Conclusion

For the foregoing reasons, the FTC's motion to enter an
order of judgment remains pending during the period that the
parties will further explore the possibilities of settling this
case.  The parties shall file a joint status report **on or before
July 12, 2006.**

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

June 20, 2006

cc:  Stacey P. Ferguson, Esquire
     David P. Frankel, Esquire
     Charulata B. Pagar, Esquire
     Rosemary Russo, Esquire
     Laura M. Sullivan, Esquire
     Martha Van Oot, Esquire
     John McFerrin Clancy, Esquire
     John Robert Martinson, Esquire