## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Civil No.: 04-377-JD |
| Plaintiff, | |
| v. | |
| SEISMIC ENTERTAINMENT PRODUCTIONS, INC., *et al.* | |
| Defendants. | |

## ORDER OF DEFAULT JUDGMENT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF AGAINST MAILWIPER, INC. AND SPY DELETER, INC.

Plaintiff, Federal Trade Commission ("FTC" or "Commission"), filed an Amended Complaint for Permanent Injunction and Other Equitable Relief ("Amended Complaint") pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), alleging, *inter alia,* that John Robert Martinson ("Martinson"), Mailwiper, Inc. ("Mailwiper"), and Spy Deleter, Inc. ("Spy Deleter") engaged in unfair acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. §§ 45(a) in connection with their marketing of software products to consumers. (Dk. No. 37).

Mailwiper and Spy Deleter (collectively, "Defendants") failed to answer or otherwise respond in this matter, and the Clerk of the Court has entered their default. (Dk. No. 48). Therefore, the Court having considered the Commission's motions and evidence in this matter, it is hereby ordered that the Commission is granted Default Judgment against Mailwiper and Spy Deleter. It is further **ORDERED**, **ADJUDGED**, and **DECREED** as follows:

## FINDINGS

1.      This Court has jurisdiction over the subject matter of this case and over the Defendants.

2.      Venue as to the Defendants in the District of New Hampshire is proper.

3.      The Commission has authority to seek the relief it has requested.

4.      The acts and practices of Defendants are in or affecting commerce, as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

5.      The Amended Complaint (Dk. No. 37) states a claim upon which relief may be granted against Defendants under Sections 5(a)(1) and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a) and 53(b).

6.      On or about April 23, 2005, Defendants were served with the summons and Amended Complaint pursuant to Federal Rule of Civil Procedure 4.  (Dk. Nos. 39 and 41). Defendant Martinson was personally served with the summons and the FTC's amended complaint directed against Mailwiper, Spy Deleter and others.  Defendant Martinson was one of Mailwiper's and Spy Deleter's last executive officers named in their last annual registrations. (Dk. No. 123, # 1).

7.      Mailwiper and Spy Deleter are Georgia corporations with the same principal place of business at 905 Roberts Landing Cove, Atlanta, Georgia 30350 and the same registered agent. *See* Answer of John Robert Martinson to Commission's First Amended Complaint at ¶ 9 ("Martinson Answer") (Dk. No. 82) and Declaration of Sallie S. Schools at ¶¶ 13-14, Atts. O-P, attached as Exhibit 1 to Federal Trade Commission's Memorandum in Support of Motion For

Leave to Name Additional Defendants and to File First Amended Complaint ("S. Schools Dec. Amend Complaint") (Dk. No. 35, #2).

8.        On or about February 17, 2005, Mailwiper and Spy Deleter filed articles of dissolution with the state of Georgia.  (Dk. No. 62, #1).

9.        Georgia law provides:

> Upon filing of articles of dissolution the corporation shall cease to exist, except for the purpose of actions or other proceedings, which may be brought against the corporation by service upon any of its last executive officers named in its last annual registration . . . all of which may proceed in the corporate name.

*See* Ga. Code Ann. § 14-2-1408(b).  Because the FTC served Mailwiper and Spy Deleter with the summons and Amended Complaint by personally serving Martinson, one of their last executive officers, that service was valid, effective and in accord with Ga. Code Ann. § 14-2-1408(b).

10.        Mailwiper and Spy Deleter failed to file an answer or otherwise respond to the Amended Complaint within the time limits set forth in Federal Rule of Civil Procedure 12.

11.        The Clerk of the Court, pursuant to Federal Rule of Civil Procedure 55(a), entered default against Mailwiper and Spy Deleter on May 17, 2005.  (Dk. No. 48).  Mailwiper and Spy Deleter have not contested the entry of default, as provided for in Federal Rule of Civil Procedure 55(c).

12.        Mailwiper and Spy Deleter are corporations, and therefore are neither infants nor incompetent.

13.     Defendants Mailwiper, and Spy Deleter operated a common enterprise while engaging in the unfair acts and practices that are the basis of the Amended Complaint, and therefore are jointly and severally liable for said acts and practices.  *See FTC v. Bay Area Business Council, Inc.,* 2004 U.S. Dist. LEXIS 6192, at \*33-35 (N.D. Ill. April 9, 2004); *FTC v. Think Achievement Corp.,* 144 F. Supp. 2d 993, 1011, 1012-13 (N.D. Ind. 2000);  *FTC v. J.K. Publications,* 99 F. Supp. 2d 1176, 1201-02 (C.D. Cal. 2000); *FTC v. Wolf*, 1996 U.S. Dist. LEXIS 1760, at \*22-23 (S.D. Fla. Jan 30, 1996).

14.     Since at least October 2003, and continuing thereafter, Mailwiper offered for sale, sold, and distributed computer software products, including purported "anti-spyware" software called Spy Wiper.  *See* Martinson Answer ¶ 9 (Dk. No. 82) and S. Schools Dec. Amend Complaint ¶ 16(a), Att. R (Dk. No. 35, #2).  The cost to consumers for Spy Wiper was approximately $30 for a one-year license.  *See* Declaration of Rupinder Kaur at ¶ 10, Att. A, attached as Exhibit 7 to the Federal Trade Commission's Memorandum in Support of Its Motion for a Temporary Restraining Order (Dk. No. 3, #66).

15.     Since at least March 2004, and continuing thereafter, Spy Deleter offered for sale, sold, and distributed computer software products, including purported "anti-spyware" software called Spy Deleter.  *See* Martinson Answer ¶ 10 (Dk. No. 82) and S. Schools Dec. Amend Complaint ¶ 15, Att. Q (Dk. No. 35, #2).  The cost to consumers for Spy Deleter was approximately $30 for a one-year license.  *See* Declaration of Colby Gordan at ¶ 4, attached as Exhibit 6 to the Federal Trade Commission's Memorandum in Support of Its Motion for a Temporary Restraining Order (Dk. No. 3, #65).

16.     Defendants retained Co-Defendant Sanford Wallace ("Wallace") as their affiliate to promote, advertise, and market Spy Wiper and Spy Deleter on their behalf.  *See* Martinson Answer ¶¶ 9-10 (Dk. No. 82); S. Schools Dec. Amend Complaint ¶¶ 15, 16(a), and 18, Atts. Q-R (Dk. No. 35, #2); and S. Schools Dec. Proposed Judgment Order ¶ 8, Exhs. 11-14 (Dk. No. 96).

17.     Defendants paid Wallace a 45 or 50 percent commission on any sales of Spy Wiper or Spy Deleter that he generated.  *See* S. Schools Dec. Amend Complaint ¶ 15-16(a), Atts. Q-R (Dk. No. 35, #2; Dk. No. 123, #1).

18.     Defendants continuously paid Wallace to promote, advertise, and market Spy Wiper and Spy Deleter on their behalf until at least the date that the Commission filed its Complaint against Wallace.  *See* S. Schools Dec. Amend Complaint ¶ 18 (Dk. No. 35, #2).

19.     To induce the purchase of Spy Wiper and Spy Deleter, Wallace, on behalf of Defendants, downloaded spyware, advertising programs, and other software to consumers' computers, which affected the computers' functionality, and then advertised Spy Wiper or Spy Deleter to these same consumers as a means to resolve the computer problems that Defendants caused.  *See* Declaration of Steven D. Gribble, Ph.D. at ¶¶ 6-7, 9-10, 13, 15, 30-39, Atts. B, D and G, attached as Exhibit 1 to the Federal Trade Commission's Memorandum in Support of Its Motion for a Temporary Restraining Order ("S. Gribble Dec.") (Dk. No. 3, #7).

20.     Wallace, on behalf of Defendants, exploited vulnerabilities in the Internet Explorer ("IE") web browser to modify the IE web browser and download and install spyware, advertising programs, and other software to computers without consumers' authorization.  *See* S. Gribble Dec. ¶¶ 6,7, 9, 22-26, and 36-39, Att. F (Dk. No. 3, #7).

21.     Consumers whose computers were exploited received a stream of pop-up advertisements, had their IE web browser home page changed to a different web page controlled by Wallace, had their Internet searches hijacked, had their web browsers redirected to web pages different than those that they selected, and had their computers' memory and resources depleted. *See* S. Gribble Dec. ¶¶ 6-7, 15, 9-10, 33-39. (Dk. No. 3, #7).  *See also* Declaration of James Alexander Beuhring at ¶¶ 3,4,6, attached as Exhibit 5 to the Federal Trade Commission's Memorandum in Support of Its Motion for a Temporary Restraining Order (Dk. No. 3, #60); Declaration of Paul Mancine at ¶¶ 3-6,8, Att. A, attached as Exhibit 9 to the Federal Trade Commission's Memorandum in Support of Its Motion for a Temporary Restraining Order ("P. Mancine Dec.") (Dk. No. 3, #71); Declaration of Bridget Pansano at ¶¶ 3, 4-8, attached as Exhibit 12 to the Federal Trade Commission's Memorandum in Support of Its Motion for a Temporary Restraining Order (Dk. No. 3, #75).

22.     Wallace disseminated, on behalf of Defendants, advertisements marketing Spy Wiper and Spy Deleter.  These ads were distributed to consumers whose computers Wallace exploited. *See* Answer of Sanford Wallace and SmartBot.Net, Inc. to Commission's First Amended Complaint at ¶ 24 (Dk. No. 82).  *See also, e.g.* S. Gribble Dec. ¶¶ 37(a)-(b), Atts. G (Dk. No. 3, #7) and P. Mancine Dec. at ¶¶ 3 and 8, Att. A.

23.     The advertisements warned consumers that they must purchase the advertised products immediately to resolve the computer problems that Wallace caused on behalf of Defendants.  *See id.*

24.     Defendants knew or should have known of the methods that Wallace used to induce consumers to purchase Spy Wiper and Spy Deleter.  *See* S. Schools Dec. Proposed Judgment

Order ¶ 8, Exhs. 7-10, 13 and 15 (Dk. No. 96) and S. Schools Dec. Amend Complaint ¶¶ 16(b) and (e)-(f), Atts. S and V-W (Dk. No. 35, #2).

25.     Through their course of conduct in marketing Spy Wiper and Spy Deleter, Defendants compelled consumers to either spend $30 to purchase their advertised products or otherwise spend substantial time and money to resolve the problems with their computers.

26.     Consumers could not reasonably avoid this substantial injury because Wallace on behalf of Defendants exploited vulnerabilities in their computers' IE web browsers to download and install without their knowledge and authorization software that negatively affected their computers' functionality.

27.     Defendants' course of conduct in marketing Spy Wiper and Spy Deleter has no benefits to consumers or competition.

28.     Therefore, Defendants' practices described above are unfair and violate Section 5 of the FTC Act, 15 U.S.C. § 45(a).

29.     Consumers paid *at least* $1,862,270.18 to Mailwiper and Spy Deleter for SpyWiper and SpyDeleter.as a result of Defendants' unlawful practices.  *See* Dk. 123, #1; S. Schools Dec. Amend Complaint ¶¶ 17(a) and 18 (Dk. No. 35, #2).

30.     Therefore, Defendants are jointly and severally liable for restitution in an amount of at least $1,862,270.18.

31.     There is a reasonable likelihood of recurrence of the acts and practices alleged in the Amended Complaint unless Defendants are permanently enjoined from such acts and practices.

32.     The Entry of this Default Judgment is in the public interest.

33.      Pursuant to Federal Rule of Civil Procedure 65(d), the provisions of this Judgment are binding upon Defendants Mailwiper and Spy Deleter, and their officers, agents, servants, representatives, employees, and all other persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise.

34.      This action and the relief entered herein are in addition to, and not in lieu of, any other remedies, civil or criminal, that may be provided by law, including any proceedings the Commission may initiate to enforce this Default Judgment and Permanent Injunction.

## **DEFINITIONS**

For the purpose of this Order, the following definitions shall apply:

A.      "Assisting others" means knowingly providing any of the following services to any person or entity:

1.      developing, supplying, distributing, or publishing any software program, product, or service;

2.      formulating, developing, or providing, or arranging for the formulation, development, or provision of, any Internet advertising or marketing content for any person or entity; or

3.      performing advertising or marketing services of any kind for any person or entity.

B.      "Affiliate program" means any program whereby any person agrees to advertise, market, promote, disseminate, distribute, or download any program, product, or service, including, but not limited to, software products, on behalf of Defendants.

C.      "Commerce" means as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

D.    The "World Wide Web" or the "Web" is a system used on the Internet for cross-referencing and retrieving information.  Documents ("pages" or "sites") on the World Wide Web are most frequently formatted in a language called HTML or HyperText Markup Language, that supports links to other documents on the World Wide Web.

E.    A "web site" is a set of electronic files or documents, usually a home page and subordinate pages, readily viewable on a computer by anyone with access to the Web and standard Internet browser software.

F.    A "web browser" is a software application used to view, download, upload, surf or otherwise access documents ("pages" or "sites") on the World Wide Web.  Web browsers read coded documents that reside on servers, and interpret the coding into what users see rendered as a web page or web site.  A user may retrieve and view a web page or site by entering the Uniform Resource Locator ("URL") or domain name of the web page in the address bar of the web browser.

G.    A "security vulnerability" means a weakness, flaw, or bug in a software program or application that can be used to increase access privileges to a computer system, compromise data stored on it, or control its operation.

H.    "Express consent" means that, prior to installing any software program or application to consumers' computers:

    1.    Defendants clearly and prominently disclose the material terms of such software program or application; and

2.      Consumers install or download such software program or application by clicking on a button that is labeled to convey that it will activate the installation or download, or by taking a substantially similar action.

I.      "Clearly and prominently" shall mean that, in the case of advertisements communicated through an electronic medium (such as television, video, radio, and interactive media such as the Internet and online services), the disclosure shall be presented simultaneously in both the audio and visual portions of the advertisement.  Provided, however, that in any advertisement presented solely through visual or audio means, the disclosure may be made through the same means in which the advertisement is presented.  The audio disclosure shall be delivered in a volume and cadence sufficient for an ordinary consumer to hear and comprehend it.  The visual disclosure shall be of a size and shade, and shall appear on the screen for a duration, sufficient for an ordinary consumer to read and comprehend it.  In addition to the foregoing, in interactive media the disclosure shall also be unavoidable and shall be presented prior to the consumer installing or downloading any software code, program, or content and prior to the consumer incurring any financial obligation.

J.      Unless otherwise specified, "Defendants" means:

1.      Mailwiper, Inc., a corporation, its divisions and subsidiaries, its successors and assigns, and its officers, agents, representatives, and employees; and

2.      Spy Deleter, Inc., a corporation, its divisions and subsidiaries, its successors and assigns, and its officers, agents, representatives, and employees.

K.      "FTC" or "Commission" means the Federal Trade Commission.

L.     A requirement that any Defendant "notify," "furnish," "provide," or "submit" to the

Commission means that the Defendant shall send the necessary information via first class mail,

costs prepaid, or via overnight carrier, to:

>       Associate Director for Enforcement
>       Federal Trade Commission
>       600 Pennsylvania Avenue, N.W.
>       Washington D.C.  20580
>       Attn: *FTC v. Seismic Entertainment Productions, Inc., et al.* (D.N.H.)

M.     The terms "and" and "or" in this Order shall be construed conjunctively or disjunctively

as necessary, to make the applicable sentence or phrase inclusive rather than exclusive.

N.     The term "including" in this Order means "including without limitation."

## PROHIBITED BUSINESS ACTIVITIES

## I.

**IT IS THEREFORE ORDERED** that Defendants Mailwiper, Inc. and Spy Deleter, Inc.

and their officers, agents, directors, employees, salespersons, independent contractors,

subsidiaries, affiliates, successors, assigns and all other persons or entities in active concert or

participation with any of them who receive actual notice of this Order by personal service or

otherwise, whether acting directly or through any person, corporation, subsidiary, division, or

other device, are hereby enjoined from, or assisting others in, publishing, disseminating, or

distributing on or through the Internet, the World Wide Web, any bulletin board system, File

Transfer Protocol ("FTP"), electronic-mail, instant message, web page, or web site, any software

script, code, or other content that exploits a security vulnerability of any computer operating

system, web browser, or other application to download or install onto any computer any software

code, program, script, or content.

## II.

**IT IS FURTHER ORDERED** that, Defendants Mailwiper, Inc. and Spy Deleter, Inc. and their officers, agents, directors, employees, salespersons, independent contractors, subsidiaries, affiliates, successors, assigns and all other persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any person, corporation, subsidiary, division, or other device, in connection with the advertising, promotion, marketing, offering for sale, sale, or provision of any goods or services on or through the Internet, the World Wide Web, or any web page or web site, are enjoined from, or assisting others in:

A.  installing or downloading any software program or application without express consent;

B.  redirecting computers connected to the Internet or World Wide Web to different web sites, web pages, FTP servers, or other Internet servers than those that the consumer selects to visit;

C.  changing or causing to change any web browser's default home page to a different web page; and

D.  modifying or replacing any search engine's or other application's search features or functions.

### MONETARY RELIEF

### III.

**IT IS FURTHER ORDERED** that:

A.  Judgment for restitution is hereby entered in favor of the Commission and against the Defendants, jointly and severally, in the amount of one million, eight hundred sixty-two thousand, two hundred seventy dollars and eighteen cents ($1,862,270.18).

B.     All payments shall be made in accord with instructions provided by the Commission.

C.     All funds paid pursuant to this Order shall be deposited into a fund administered by the Commission or its agent to be used for equitable relief, including but not limited to consumer redress, and any attendant expenses for the administration of such equitable relief.

D.     In the event that the Commission in its sole discretion determines that direct redress to consumers is wholly or partially impracticable or funds remain after redress is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to the Defendants' practices alleged in the Complaint.  Any funds not used for such equitable relief shall be deposited to the United States Treasury as disgorgement. The Defendants shall have no right to challenge the Commission's choice of remedies under this Paragraph or the manner of distribution chosen by the Commission.  No portion of any payments under the judgment herein shall be deemed a payment of any fine, penalty, or punitive assessment.

## MONITORING BY DEFENDANTS FOR COMPLIANCE

## IV.

**IT IS FURTHER ORDERED** that should they conduct business in the future, Defendants Mailwiper, Inc. and Spy Deleter, Inc., and their officers, agents, directors, employees, salespersons, independent contractors, subsidiaries, affiliates, successors, assigns and all other persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, in connection with the advertising, promotion,

marketing, offering for sale, sale, or provision of any goods or services on or through the Internet, the World Wide Web, or any web page or web site, are hereby enjoined from failing to:

A.   Obtain contact information from any prospective participant in any affiliate program.  In the case of a natural person, Defendants shall obtain the prospective participant's first and last name, physical address, country, telephone number, e-mail address, date of birth, and complete bank account information as to where payments are to be made.  In the case of corporations, partnerships, proprietorships, limited liability companies, organizations, associations, cooperatives, agencies, or other legal entities, Defendants shall obtain the first and last name, physical address, country, telephone number, e-mail address, and date of birth for the natural person who owns, manages, or controls the prospective participant, and complete bank account information as to where payments are to be made;

B.   Prior to any such prospective participant's acceptance into any affiliate program:

1.   provide each such person a copy of this Order;

2.   obtain from each such person a signed and dated statement acknowledging receipt of this Order and expressly agreeing to comply with this Order.  Any electronic signature that Defendants obtain pursuant to this Paragraph must comply with the signature requirements of the Electronic Signatures in Global and National Commerce Act ("E-Sign Act"), 15 U.S.C. § 7001 *et seq*; and

3.   clearly and prominently disclose that engaging in acts or practices prohibited by this Order will result in immediate termination of any affiliate program account and forfeiture of all monies earned or owed;

C.   Establish, implement, and maintain an Internet-based mechanism, including, but not limited to, e-mail for:

1.   consumers to report complaints to Defendants regarding the practices of any affiliate program participant;

2.   Defendants to correctly associate each such complaint with the affiliate that is the subject of the complaint; and

3.   Defendants to receive and respond to such complaints, whether received directly or indirectly, in a timely manner;

Defendants shall clearly and prominently disclose the existence of such reporting mechanism on their web sites;

D.   Promptly and completely investigate any complaints that the Defendants receive through Paragraph IV.C or any other source to determine whether any such participant is engaging in acts or practices prohibited by this Order; and

E.   Terminate, immediately, any participant in any affiliate program that Defendants reasonably conclude has engaged or is engaging in acts or practices prohibited by this Order and cease payments to any such person.

*Provided, however,* that this Paragraph does not authorize or require Defendants to take any action that violates any federal, state, or local law.

## DISTRIBUTION OF ORDER

## V.

**IT IS FURTHER ORDERED** that, should they conduct business in the future and continuing for a period of five (5) years thereafter, Defendants shall deliver copies of the Order

as directed below:

A.   Defendants Mailwiper and Spy Deleter, if  in existence or doing business, shall deliver a copy of this Order to each of their respective principals, officers, directors, and managers.  Defendants Mailwiper and Spy Deleter, if in existence or doing business, also must each deliver copies of this Order to all of their respective employees, agents, and representatives who engage in conduct related to the subject matter of the Order. Delivery shall occur prior to them assuming their responsibilities.

B.   Defendants Mailwiper and Spy Deleter must secure signed and dated statement acknowledging receipt of the Order, within thirty (30) days of delivery, from all persons receiving a copy of the Order pursuant to this Part.

## COMMISSION'S AUTHORITY TO MONITOR COMPLIANCE

## VI.

**IT IS FURTHER ORDERED** that, should they conduct business in the future and for the purpose of monitoring and investigating compliance with any provision of this Order:

A.   The Commission is authorized to monitor Defendants' compliance with this Order by all lawful means, including but not limited to the following means:

1.   Obtaining discovery from any person, without further leave of court, using the procedures proscribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, and 45;

2.   Posing as customers and clients to Defendants, Defendants' employees, or any other entity managed or controlled in whole or in part by any Defendant, without the necessity of identification or prior notice;

B.   Defendants shall permit representatives of the Commission to interview any employer, consultant, independent contractor, representative, agent, or employee who has agreed

to such an interview, relating in any way to any conduct that is subject to this Order. The person interviewed may have counsel present;

C.     Within ten (10) days of receipt of written notice from a representative of the Commission, Defendants each shall provide entry during normal business hours to any business location in Defendants' possession or direct or indirect control to inspect the business operation;

D.     Nothing in this Order shall limit the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain any documentary material, tangible things, testimony, or information relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

## COMPLIANCE REPORTING

### VII.

**IT IS FURTHER ORDERED** that, for purposes of ensuring that compliance with the provisions of this Order may be monitored, Defendants Mail Wiper and Spy Deleter, should they conduct business in the future:

A.     For a period of five (5) years from the date they commence conducting business, Defendants shall notify the Commission of any changes in corporate structure that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor corporation; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of a bankruptcy petition; or a change in the corporate name or address, at least thirty (30) days prior to

such change, *provided* that, with respect to any proposed change in the corporation about which Defendants Mailwiper, Inc. and Spy Deleter, Inc. learn less than thirty (30) days prior to the date such action is to take place, that Defendant shall notify the Commission as soon as is practicable after obtaining such knowledge.

B.    Sixty (60) days after the date of commencing business in the future, Defendants, each shall provide a written report to the Commission, sworn to under penalty of perjury, setting forth in detail the manner and form in which they have complied and are complying with this Order.  This report shall include, but not be limited to any changes required to be reported pursuant to subparagraph (A) above; a copy of each acknowledgment of receipt of this Order obtained by each of Defendants pursuant to Paragraph V of this Order.  Upon written request by a representative of the Commission, Defendants shall submit additional written reports (under oath, if requested) and produce documents on fifteen (15) days notice with respect to any conduct subject to this Order.

C.    For purposes of the compliance reporting required by this Paragraph, the Commission is authorized to communicate directly with Defendants.

## RECORD KEEPING PROVISIONS

## VIII.

**IT IS FURTHER ORDERED** that, for a period of eight (8) years from the date of entry of this Order, Defendants Mailwiper, Inc. and Spy Deleter, Inc., if in existence or doing business, are hereby restrained and enjoined from failing to create and retain the following records:

A.    Accounting records that reflect the cost of services sold, revenues generated, and the disbursement of such revenues;

B.   Personnel records accurately reflecting:  the name, address, and telephone number of

each person employed in any capacity by such business, including as an independent

contractor; that person's job title or position; the date upon which the person

commenced work; and the date and reason for the person's termination, if applicable;

C.   Customer files containing the names, addresses, telephone numbers, dollar amounts

paid, quantity of items or services purchased, and description of items or services

purchased, to the extent such information is obtained in the ordinary course of business;

D.   Complaints and refund requests (whether received directly, indirectly or through any

third party), and any response to those complaints or requests;

E.   Copies of advertisements, promotional materials, or other marketing materials prepared

or distributed in connection with any affiliate program; and

F.   All records and documents necessary to demonstrate full compliance with each

provision of this Order, including, but not limited to, copies of acknowledgments of

receipt of this Order, required by Paragraph V(B), and all reports submitted to the FTC

pursuant to Paragraph VII.

## SCOPE OF ORDER

## IX.

**IT IS FURTHER ORDERED** that this Order resolves only claims against Defendants

Mailwiper, Inc. and Spy Deleter, Inc. as alleged in the Amended Complaint.  This Order does not

preclude the Commission from initiating further action or seeking any remedy against any other

persons or entities, including without limitation persons or entities who may be subject to

portions of this Order by virtue of actions taken in concert or participation with Defendants

Mailwiper, Inc., and Spy Deleter, Inc., and persons or entities in any type of indemnification or contractual relationship with Defendants.

## RETENTION OF JURISDICTION

## X.

      **IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

      **IT IS SO ORDERED**, this __14__ day of ____July____, 2006.

/s/ Joseph A. DiClerico, Jr.

_____
UNITED STATES DISTRICT JUDGE
JOSEPH A. DICLERICO, JR.

Presented by:

/s/ Rosemary Rosso_____ _____
DAVID P. FRANKEL (DC Bar No. 339325)
ROSEMARY ROSSO (New York Bar No. 1729730)
STACEY FERGUSON (District of Columbia Bar No. 471478)
LAURA M. SULLIVAN (New York Bar No. 2919660)
Federal Trade Commission
600 Pennsylvania Avenue, NW, Rm. NJ-3212
Washington, DC  20580
(202) 326-2812, -2174, -3327 (voice)
(202) 326-3259 (fax)
rrosso@ftc.gov

ATTORNEYS FOR PLAINTIFF